**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MICHAEL VAN TEEFFELEN,

Plaintiff,

v.

AT&T MOBILITY LLC,

Defendant.

Case No.:

Removed from the County Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2020-021936-SP-26

# **AT&T Mobility LLC's Notice of Removal**

Defendant AT&T Mobility LLC removes this action currently pending in the County Court of the 11th Judicial Circuit in and for Miami-Dade County, to the United States District Court for the Southern District of Florida, Miami Division, on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

## **Nature of Removed Action**

1) On March 30, 2024, AT&T announced that AT&T-specific data fields were contained in a data set released online approximately two weeks before. AT&T shared its determination with regulators and the public, took precautionary measures, and began notifying customers. As of September 30, 2024, over 90 related actions have been filed against AT&T and its related entities, including AT&T Mobility LLC, in connection with the incident.

2) On April 2, 2024, one of the plaintiffs moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate pending federal court actions in

multidistrict litigation ("MDL") in the Northern District of Texas. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 1 (Apr. 2, 2024). On June 5, 2024, the JPML issued a Transfer Order consolidating actions relating to the data incident on the grounds that centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. The JPML assigned the consolidated proceeding to Judge Ada E. Brown in the Northern District of Texas and broadly noted that "any other related actions" are potential tag-along actions pursuant to the JPML Rules. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 139 (June 5, 2024).

3) In November 2020, Plaintiff Michael Van Teeffelen commenced an action against AT&T Mobility LLC in the County Court of the 11th Judicial Circuit in and for Miami-Dade County bringing claims related to an administrative fee issue unrelated to the data incident. On September 11, 2024, Van Teeffelen filed an Amended Complaint adding claims for negligence and violations of the Florida Deceptive and Unfair Trade Practices Act related to the data incident seeking damages, injunctive and declaratory relief, attorney's fees and costs and "any other relief the Court deems just and proper" (the "State Court Action"). Van Teeffelen's Amended Complaint in the State Court Action is attached hereto as **Exhibit A**, and a true and correct copy of the state court docket and all process, pleadings, and orders served on AT&T Mobility LLC in the State Court Action is attached hereto as **Exhibit B**.

4) Van Teeffelen's counsel also filed numerous other complaints raising FDUTPA claims against AT&T Mobility LLC regarding the same data incident on behalf of other named plaintiffs in Florida courts. *See, e.g.*, *Caruso v. AT&T Mobility LLC,* Case No. 2024-112830-SP-25 (Miami-Dade County); *Surowiec v. AT&T Mobility LLC,* Case No. 2024-103564-SP-25 (Miami-Dade County); *Young v. AT&T Mobility LLC,* Case No. 2024-105706-SP-25 (Miami-Dade County); *Quick v. AT&T Mobility LLC,* Case No. 2024-114584-SP-25 (Miami-Dade County); and *Varela v. AT&T Mobility LLC,* Case No. 2024-116186-SP-25 (Miami-Dade County). AT&T removed each of these cases to the Southern District of Florida and tagged them for inclusion in the MDL. The JPML conditionally transferred each of these cases to the MDL and plaintiffs moved to vacate the transfer. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 181, 186, 227. On September 26, 2024, the JPML held a hearing without oral argument on Van Teeffelen's counsel's motion and a decision on transfer should issue shortly. In the meantime, the courts in *Caruso*, *Young*, *Surowiec* and *Quick* sua sponte stayed all proceedings in the district court pending a decision on transfer to the JPML.

5) In addition to the cases already conditionally transferred to the MDL, Van Teeffelen's counsel also filed three additional complaints in Florida state court raising FDUTPA claims against AT&T Mobility LLC regarding the same data incident on behalf of three other named plaintiffs. *See Simply180, Inc. v. AT&T Mobility LLC*, Case No. CONO-24-053410 (Broward County); *Simon v. AT&T Mobility LLC*, Case No. CONO-24-053661 (Broward County); and *Braverman v.*

*AT&T Mobility LLC*, Case No. 2022-047425-SP-25 (Miami-Dade County). AT&T removed all three cases to the Southern District of Florida and tagged them for inclusion in the MDL. The JPML is likely to conditionally transfer these cases soon.

6) Van Teeffelen's claims are virtually indistinguishable from those already filed across the country against AT&T Inc. and AT&T Mobility LLC—including several brought by Florida citizens and in Florida federal courts—and consolidated for coordinated proceedings in the Northern District of Texas.

7) Indeed, there are numerous previously-filed federal cases transferred to the MDL where Plaintiff is already a putative class member. For example, Plaintiff is a putative class member in cases seeking to represent "nationwide" classes of those allegedly impacted by the incident. *See e.g.*, *Unruh v. AT&T Mobility LLC et al.*, Case No. 3:24-cv-1473 (N.D. Tex.), ECF 1 at ¶¶ 6, 7, 61, 89, 130, 143 (contract, unfair practices and declaratory judgment claims brought by Florida citizens against AT&T Mobility LLC and AT&T Inc. on behalf of a putative nationwide class of "[a]ll individuals whose personal information was compromised" as a result the data incident); *Garner v. AT&T Inc.*, Case No. 3:24-cv-00962 (N.D. Tex.), ECF 1 at ¶¶ 21, 52, 53, 133, 155 (claims for violations of the duty of good faith and fear dealing and the FDUTPA brought by a Florida citizen on behalf of a nationwide putative class of "[a]ll natural persons in the United States whose Personally Identifiable Information was compromised" as a result of the data incident and also on behalf of a subclass of "[a]ll natural persons in the State of

Florida whose Personally Identifiable Information was compromised" as a result of the data incident).

**GROUNDS FOR REMOVAL UNDER 28 U.S.C. § 1332(a)**

8) Pursuant to 28 U.S.C. 1332(a), the Court has jurisdiction over this case because (1) there is complete diversity of citizenship between Van Teeffelen and AT&T Mobility LLC; and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs.

**A. Complete diversity exists.**

9) For purposes of diversity jurisdiction, an individual is deemed a citizen of the state where he or she is domiciled. *See McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002). Van Teeffelen is a citizen of the state of Florida.

10) AT&T Mobility LLC is a Delaware limited liability company. "[A] limited liability company is deemed to be a citizen of any state of which any of its members is a citizen." *Blue Ridge Healthcare Mgmt., LLC v. Western World Ins. Co.*, 2020 WL 13356807, at *2 (S.D. Fla. Dec. 15, 2020).

11) AT&T Mobility LLC is a limited liability company comprised of four members: BellSouth Mobile Data, Inc., New Cingular Wireless Services, Inc., SBC Long Distance, LLC, and AT&T Investment & Tower Holdings, LLC.

12) BellSouth Mobile Data, Inc. is a Georgia corporation with its principal place of business in Georgia. Thus, BellSouth Mobile Data is a citizen of Georgia.

13) New Cingular Wireless Services, Inc. is a Delaware corporation with its principal place of business in Georgia. Thus, New Cingular Wireless Services is a citizen of Delaware and Georgia.

14) SBC Long Distance, LLC is a limited liability company with one member—SBC Telecom, Inc., which is a Delaware corporation with its principal place of business in Texas. Thus, SBC Long Distance, LLC is a citizen of Delaware and Texas.

15) AT&T Investment & Tower Holdings, LLC is a limited liability company with four members—AT&T Capital Services, Inc., JVI General Partnership, SBC Portfolio Holdings, Ltd., and SBC Telecom, Inc.

16) AT&T Capital Services, Inc. is a Delaware corporation with its principal place of business in Illinois. Thus, AT&T Capital Services is a citizen of Delaware and Illinois.

17) JVI General Partnership has two partners—AT&T Wireline Holdings, LLC and AT&T Solutions Inc. For purposes of determining diversity jurisdiction, "partnerships are citizens of every state in which one of their members or partners are citizens." *Kohlmeier v. American Honda Motors Co., Inc.*, 2022 WL 4104035, at *1 (M.D. Fla. Sept. 8, 2022). AT&T Wireline Holdings, LLC has one member—AT&T DW Holdings, Inc., a New York corporation with its principal place of business in Texas. Thus, AT&T Wireline Holdings is a citizen of New York and Texas. AT&T Solutions Inc. is a Delaware corporation with its principal place of

business in Texas. Thus, AT&T Solutions is a citizen of Delaware and Texas. Therefore, JVI General Partnership is a citizen of New York, Texas, and Delaware.

18) SBC Portfolio Holdings, Ltd. is a Delaware corporation with its principal place of business in Texas. Thus, SBC Portfolio is a citizen of Delaware and Texas.

19) SBC Telecom, Inc. is a Delaware corporation with its principal place of business in Texas. Thus, SBC Telecom is a citizen of Delaware and Texas.

20) Based on the foregoing, AT&T Mobility LLC is a citizen of the states of Georgia, Delaware, Texas, New York, and Illinois.

21) Thus, there is complete diversity between Van Teeffelen and AT&T Mobility LLC.

**B. The amount in controversy is satisfied.**

22) An action may be removed if the defendant establishes, consistent with the pleading requirements of Civil Rule 8, that the aggregate amount in controversy, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). When a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 87. This standard is appropriate even when the complaint fails to allege, or seeks, a specific amount of damages. *See NextPlat Corp. v. Seifert*, 2023 WL 4972827, at *3–4 (S.D. Fla. June

14, 2023) (citing *Dart Cherokee* and explaining that a "removing defendant satisfies [the amount-in-controversy] requirement by claiming a sufficient sum in good faith" despite plaintiff's complaint not pleading more than $75,000 at issue).

23) Here, Van Teeffelen claims "[t]his is an action against AT&T for damages for $8,000, exclusive of interest, attorney's fees and costs." Ex. A, Compl. ¶ 1. But at the same time, he claims entitlement to "any other relief the Court deems just and proper," (Compl. ¶ 172) which demonstrates that he does not intend to limit his request for relief to the amount stated in his complaint. Indeed, the allegations in his complaint conclusively establish that he seeks damages in an amount exceeding $75,000. *See, e.g.*, *Schwartzben v. Nat'l Fire & Marine Ins. Co.*, 2022 WL 4102799, at *4 (S.D. Fla. Sept. 8, 2022) (looking beyond the plaintiff's allegations of a specific amount and considering other requested relief in concluding the amount in controversy was satisfied).

24) <u>Actual damages</u>: Van Teeffelen alleges that, as a result of AT&T's conduct, he has suffered various forms of damages, including "loss of rental or use value of their PII"; "out-of-pocket expenses"; "[l]ost opportunity costs" occasioned by AT&T's alleged conduct; "unconsented disclosure of their PII"; lost time and effort; anxiety and emotional distress; "continued risk to their PII"; and future costs to detect and prevent consequences of the incident "for the rest of their lives." Ex. A, Compl. ¶ 159. Although Van Teeffelen claims entitlement to $8,000 in damages, similar economic damage demands in privacy cases have exceeded $8,000. *See, e.g.*,

*Aguirre v. Cap. One Bank USA N.A.*, 2023 WL 4046836, at *4 (C.D. Cal. June 15, 2023).

25) Van Teeffelen also claims entitlement to damages for future credit monitoring. Ex. A, Compl. ¶¶ 130, 146. According to Van Teeffelen, he will continue to incur costs to monitor and prevent unauthorized activity for the remainder of his life. *Id.* ¶¶ 107, 131, 159. In data incident cases involving similar allegations, courts have held that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy. *See, e.g.*, *Porras v. Sprouts Farmers Mkt., LLC*, 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) (considering costs of credit monitoring for purposes of amount in controversy); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, 2013 WL 1869618, at *2–3 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276–78 (S.D.N.Y. 2008) (holding that the amount-in-controversy "could readily exceed" the jurisdictional minimum where plaintiffs sought credit monitoring for "an indeterminate period").

26) <u>Anxiety and emotional distress</u>. Van Teeffelen also seeks to recover damages for anxiety and emotional distress. Ex. A, Compl. ¶¶ 131, 146, 159. Emotional distress damages may be considered in assessing whether the amount in controversy requirement is met. *See, e.g.*, *Scopelliti v. McClean*, 2022 WL 3209495, at *3 (M.D. Fla. July 11, 2022), *aff'd,* 2023 WL 1071626 (M.D. Fla. Jan. 27, 2023).

27) To establish the amount of emotional distress damages in controversy, "a defendant may satisfy its burden by submitting evidence of damages from decisions in comparable cases." *Schmidt v. Pantry, Inc.*, 2012 WL 1313490, at *3 (N.D. Fla. March 6, 2012). In *Drew v. Equifax Info. Servs., LLC*, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010), the Northern District of California upheld a jury award of $315,000 in emotional distress damages arising out of plaintiff's claim that he was the victim of identity theft. *Id.* at *2–3. Likewise, in *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007), the Fourth Circuit affirmed an "emotional distress award" to the plaintiff in the amount of $150,000. *Id.* at 507; *see also Aguirre*, 2023 WL 4046836, at *3–4 (in lawsuit arising from a 2019 data breach, holding that similar allegations of emotional harm as here supported "an estimate that emotional distress damages could exceed $75,000" and estimate that was "reasonable based on emotional distress damages" in other cases).

28) <u>Attorney's Fees</u>. Van Teeffelen also requests his costs and attorneys' fees incurred litigating this case. "When a statute authorizes, and a plaintiff requests, attorney's fees, a reasonable amount of those fees should be included in the amount-in-controversy." *Bele v. 21st Century Centennial Ins. Co.*, 2015 WL 3875491, at *3 (M.D. Fla. May 15, 2015). Here, Van Teeffelen has brought a Florida Deceptive and Unfair Practices Act claim, which expressly provides for the recovery of attorney's fees. *See* Fla. Stat. § 501.2105.

29) To determine whether the amount-in-controversy is met, the Court may consider the amount of attorney fees awarded in similar cases through trial.

*See Bele*, 2015 WL 3875491, at *3 (relying on its "judicial experience and common sense" to find that the amount-in-controversy was met where an attorney fee award in comparable cases would exceed the jurisdictional minimum); *Gonzalez v. Honeywell Int'l, Inc.*, 2017 WL 164358, at *3 (M.D. Fla. Jan. 17, 2017) (same; "The Court need not pinpoint the exact dollar figure of [attorney's fees] to recognize that their value adds thousands of dollars to the amount in controversy.").

30) Attorney fee awards in comparable FDUTPA cases would be sufficient to bring the amount-in-controversy here to well over the jurisdictional minimum. *See, e.g.*, *Wahl Hungaria KFT v. 4G Elecs. Grp. Inc.*, 2024 WL 896263, at *1 (S.D. Fla. March 1, 2024) (awarding $79k in attorney's fees); *Unisource Discovery, Inc. v. Unisource Discovery, LLC*, 2023 WL 4188118, at *1 (S.D. Fla. June 26, 2023) (awarding over $300k in attorney's fees).

31) Moreover, Van Teeffelen's attorney bills at a rate of $650/hour. *See Pineda v. Dale C. Glassford, P.A.*, Case No. 1:21-cv-20764, ECF 52 (S.D. Fla. August 13, 2021) (declaration of Maury Udell in support of motion for attorney fees stating that his hourly rate is $650/hour). Thus, even if Van Teeffelen had only sought $8,000 in damages, Van Teeffelen's attorney would have to bill only 99 hours to exceed the jurisdictional amount. This is significantly less than Van Teeffelen's counsel has previously sought in attorney's fees in prior FDUTPA cases brought against AT&T *in small claims court*. *See Greenberg v. AT&T Mobility LLC*, Case No. 2016-002810-SP-05 (Miami-Dade County Small Claims Division) (in a case seeking only $5k in damages, awarding $174k in attorney's fees based on 280 hours

billed by Mr. Udell in a FDUTPA action against AT&T, as well as $15k in expert fees).

32) Injunctive Relief. Finally, Van Teeffelen's request for declaratory and injunctive relief may also be considered for purposes of calculating the amount in controversy. *See Hunt v. Nationstar Mortgage, LLC*, 782 Fed. Appx. 762, 768 (11th Cir. 2019).

* * *

33) Therefore, there is complete diversity between Van Teeffelen and AT&T Mobility LLC, and the amount in controversy exceeds $75,000. Thus, this Court has original jurisdiction and removal is proper pursuant to 28 U.S.C. § 1332(a).

**JURISDICTION UNDER CAFA**

34) Van Teeffelen's case is also removable pursuant to the Class Action Fairness Act because his claims are subsumed into cases related to the data incident that have already been consolidated into an MDL by the JPML.

35) Pursuant to the Class Action Fairness Act ("CAFA"), where a proposed class involves 100 or more members, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A) and (d)(5).

36) CAFA is designed to create "efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court" and to place "the determination of more interstate class action lawsuits in the proper forum—the federal courts." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 408 (6th Cir. 2008) (quoting S. Rep. No. 109-14, at 5 (2005)). Indeed, CAFA was intended to "mak[e] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." *Id.*

37) "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). And where, as here, a plaintiff's claims are already subsumed within an existing MDL, courts have looked past artificial limitations in plaintiff's pleadings in finding federal jurisdiction.

38) For example, in *In re Kitec Plumbing Systems Products Liability Litigation*, 2010 WL 11618052 (N.D. Tex. Aug. 23, 2010), while an MDL involving allegedly defective HVAC pipe was proceeding in Texas, residents of two small communities in Washington filed actions in state court asserting the same claims. The Washington cases were removed and subsequently transferred to the MDL, where the removed plaintiffs sought to remand on the basis that CAFA's amount-in-controversy threshold was not met. Indeed, the removed plaintiffs had pled under the $5 million threshold by carving themselves out of a putative Washington class already pending before the MDL. But the *Kitec* court denied the motions to remand

holding instead that it could "pierce the pleadings in order to determine the propriety of federal jurisdiction[,]" and look to the overlapping claims in the MDL class that were "already properly before this Court" in finding federal jurisdiction. *Id.* at *6.

39) The *Kitec* court further reasoned that allowing the removed plaintiffs to proceed in state court would erode the judicial efficiencies created by the MDL and undermine CAFA's aim of eliminating both gamesmanship and copycat actions. The court found that the MDL "implicates [the] multistate or national interests" that CAFA was designed to protect and that the removed actions threatened to "create duplicative, overlapping or even identical litigation to [the MDL] if they were to be remanded." *Id.* at *7.

40) Similarly, in *Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415 (D. Md. Sept. 20, 2019), plaintiffs brought claims arising out of a data breach incident in Connecticut state court despite an ongoing MDL proceeding addressing dozens of cases brought by plaintiffs nationwide regarding the same incident. To avoid diversity jurisdiction, the *Simon* plaintiffs pled that they intended to represent only a class of stateless individuals domiciled abroad. *Id.* at *1–2. But the Court found that there was "[no] legitimate basis for the need to litigate their claims separately from the MDL because of their geographic location" and to do so would mean plaintiffs "could recover from both their state court action and from the MDL." *Id.* at *4.

41) The *Simon* court further explained that "[t]he policy justifications for finding federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint, such as preventing inefficiency and 'ensuring federal court consideration of interstate cases of national importance,' hold even more true in the MDL context." *Id.* Indeed, "[t]he primary objective of an MDL is to promote the just and efficient conduct of actions that involve common questions of fact. This interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual) actions into one lawsuit for purposes of pretrial proceedings." *Id.* Thus, "[a]llowing the Simons to manipulate CAFA would be harmful here because it could disrupt the orderly progress of the pretrial process in the Marriott MDL." *Id.*

42) A similar result was reached in *Sanders v. Kia America, Inc.*, 2023 WL 3974966 (C.D. Cal. June 13, 2023). There, California residents filed a tort action on behalf of individual plaintiffs in California state court against a California car company regarding issues with anti-theft technology. The *Sanders* plaintiffs' claims were the same as those raised in a pending MDL proceeding created to centralize all litigation for suits by consumers who purchased or leased vehicles that lacked the anti-theft technology. Plaintiffs alleged there was not minimal diversity for removal purposes because both Plaintiffs and the car companies were California residents.

43) Citing *Simon*, the court disagreed, and "reach[ed] beyond the pleadings" to determine that minimal diversity existed because the *Sanders*

plaintiffs were subsumed by a class in the MDL that contained non-California citizens. *Id.* at *5.

44) The *Sanders* court explained that, "[while] Plaintiffs are entitled to choose a state forum for their action by limiting the number of plaintiffs or the amount of recovery they seek[,] where there is actually no difference between th[e] action and the existing claims that are being pursued in a multidistrict litigation . . . this is exactly the type of case that CAFA envisioned as removable." *Id.* at *6.

45) This case is like *Kitec, Simon,* and *Sanders*. The incident allegedly impacted individuals nationwide and has resulted in over 90 suits raising the same types of claims, seeking the same types of relief, and seeking to represent classes that necessarily include Plaintiff's suit. Thus, the Court has jurisdiction under CAFA.

**A. There are more than 100 putative class members.**

46) CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

47) Here, Van Teeffelen's claims are subsumed by cases already pending before the MDL involving identical claims for relief on behalf of more than 100 putative class members *See e.g.*, *Unruh*, ECF 1 at ¶ 92 (contract, declaratory judgment and unfair practices claims brought on behalf of a putative nationwide class of "more than 73 million individuals"); *Garner*, ECF 1 at ¶ 54 (similar).

**B. Minimal diversity exists.**

48) Under CAFA, diversity of citizenship exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

49) Plaintiff is a citizen of the state of Florida, and AT&T Mobility LLC is a citizen of the states of Georgia, Delaware, Texas, New York, and Illinois.

**C. Amount-in-controversy is satisfied.**

50) Pursuant to CAFA, the complaint must put in controversy more than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See* 28 U.S.C. § 1332(d)(6).

51) The amount-in-controversy requirement is satisfied for the same reason CAFA diversity and numerosity exist in this case. Because Van Teeffelen's suit is subsumed within numerous putative classes already in the MDL, the Court may look to these actions to evaluate the amount placed in controversy. *See, e.g.*, *Sanders*, 2023 WL 3974966, at *6 (aggregating claims of members in MDL class and case brought by individuals to reach CAFA amount-in-controversy); *see also Unruh*, ECF 1 at 10 (MDL case subsuming Plaintiff in its class definition and alleging the amount in controversy is over $5 million); *Garner*, ECF 1 at ¶ 9 (same).

* * *

52) Because Van Teeffelen's case is subsumed by numerous cases already pending in the MDL, the CAFA requirements for numerosity, diversity, and amount in controversy are easily met. Thus, removal is proper.

## VENUE IS PROPER

53) This Court is in the judicial district and division embracing the place where Van Teeffelen filed the State Court Action and where it is pending. Specifically, the United States District Court for the Southern District of Florida embraces Miami-Dade County, Florida. *See* 28 U.S.C. §§ 1441, 1446.

## TIMELINESS OF REMOVAL

54) AT&T Mobility LLC was served with the Amended Complaint on September 11, 2024.

55) AT&T Mobility LLC filed this Notice within 30 days of service of the Complaint and removal is, therefore, timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999).

## NOTICE

As required by 28 U.S.C. § 1446(d), AT&T Mobility LLC is providing written notice of the filing of this Notice of Removal to Van Teeffelen and is filing a copy of

this Notice of Removal with the Clerk of the County Court for Miami-Dade County, Florida.

Dated: October 1, 2024

Respectfully submitted,

By: *Yameel L. Mercado Robles*

Yameel L. Mercado Robles (1003897)
Baker & Hostetler LLP
200 South Orange Ave., Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
ymercadorobles@bakerlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, a true and correct copy of the foregoing document was served via email and U.S. mail upon the following:

Maury L. Udell
Beighley, Myrick & Udell, P.A.
2601 S. Bayshore Drive, Suite 770
Miami, FL 33133

*Counsel for Plaintiff*

*/s/Yameel L. Mercado Robles*
*Counsel for AT&T Mobility LLC*